FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 16, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGELO'S TAVERNA AND CARBOY WINERY LLC, CAMBRYA'S CARBOY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALEXANDRIA NICOLE CELLARS LLC, JARROD BOYLE, ALEXANDRIA BOYLE,<br><br>Defendants.<br><br>ALEXANDRIA NICOLE CELLARS LLC, JARROD BOYLE, ALEXANDRIA BOYLE,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>ANGELO'S TAVERNA AND CARBOY WINERY LLC, CAMBRYA'S CARBOY LLC, CRAIG M. JONES,<br><br>Counterclaim-Defendants. | NO. 4:25-CV-5170-TOR<br><br>ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART |

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 1

BEFORE THE COURT are Plaintiffs' Motion to Dismiss Amended Counterclaims in Part (ECF No. 31) and Defendants' Motion for Leave to File Surreply (ECF No. 34). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, both motions are **DENIED**.

## BACKGROUND

This action arises out of a contract dispute between a winery and a vineyard. Plaintiffs (collectively "Carboy") operate a winery based out of Littleton, Colorado, and Defendants (collectively "ANC") operate a vineyard and winery based out of Prosser Washington. ECF Nos. 1 at ¶ 9, 25 at ¶ 5. In 2021, Carboy and ANC entered into an agreement that ANC would supply grapes to Carboy to produce bulk wine for a term of twelve years with possible yearly extensions after 2032 (the "2021 Agreement"). ECF No. 25 at ¶¶ 12,14. The grapes that ANC was to provide to Carboy fell into two categories, grapes from blocks of vines that were grown exclusively for Carboy (referred hereafter as "Per-Acre") and grapes from vines that were not grown exclusively for Carboy (referred hereafter as "Per-Ton"). *Id.* at ¶ 15. The parties agreed that Carboy was to pay a certain price for the Per-Acre grapes on a per-acre basis ("Per-Acre Agreement") and the Per-Ton grapes on a per-ton basis ("Per-Ton Agreement"). *Id.* at ¶¶ 16,17.

ANC alleges that even though the 2021 Agreement called for the production

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 2

and sale of grapes, ANC was also producing bulk wine for Carboy during that time.  ECF No. 25 at ¶ 21.  The parties thereafter amended the 2021 Agreement in 2023 (the "2023 Amendment") to recognize this pre-existing arrangement.  *Id.* The price for the wine was based on a per-gallon basis.  *Id.* at ¶ 23.  The 2021 Agreement as amended by the 2023 Amendment is hereinafter referred to as the "Amended Agreement."

ANC alleges that for harvest years 2022 through 2024, Carboy sought a downward departure of the grapes/wine it was committed to purchasing under the Per Ton Agreement.  ECF No. 25 at ¶ 27.  ANC permitted the downward departures for each of those years with the understanding that the exception was for each particular year.  *Id.* at ¶¶ 28,29.  Carboy made another request for a downward departure for the 2025 harvest year to which ANC refused.  *Id.* at ¶ 32. ANC alleges that thereafter Carboy fabricated concerns with ANC's business that it alleged needed to be addressed prior to discussing purchases from the 2025 harvest.  *Id.*  ANC alleges Carboy made false allegations about ANC's wine and business in general to avoid its contractual obligations.  *Id.* at ¶¶ 34-39.

Carboy filed this action on December 8, 2025 bringing claims against ANC for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of bailment, fraud/intentional misrepresentation, and conversion. ECF No. 1 at ¶¶ 83-132.  The following day, Carboy provided notice to ANC that

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 3

it was terminating the Amended Agreement.  ECF No. 25 at ¶ 40.

On January 13, 2026, ANC filed its Answer and asserted counterclaims of breach of contract and the covenant of good faith and fair dealing, anticipatory breach of contract, and breach of personal guarantees.  ECF No. 11 at ¶¶ 40-57.  Carboy moved to dismiss ANC's counterclaims in part.  ECF No. 15.  ANC subsequently filed an amended answer and amended counterclaims (ECF No. 25) rendering Carboy's motion to dismiss (ECF No. 15) moot.  ECF No. 28.  Carboy now moves to dismiss ANC's Amended Counterclaims in part for failing to state a claim.  ECF No. 31.

## DISCUSSION

Carboy moves to dismiss ANC's first and third counterclaims for failure to state a claim.  ECF No. 31 at 26.

### I.    Legal Standard

For a plaintiff to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This requires more than a simple "formulaic recitation of a cause of action's elements."  *Twombly*, 550 U.S. at 545.  This requires facts to support legal conclusions beyond simply stating conclusory legal statements.  *Iqbal,* 556 U.S. at 663; *Twombly*, 550

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 4

U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (stating that for a motion to dismiss, courts are not obligated to accept alleged legal conclusions as true factual allegations); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (stating legal conclusions must be supported by factual allegations). However, a court must construe facts in the light most favorable to the opposing party of the motion and a court must take the allegations of the non-moving party as true. *Twombly*, 550 U.S. at 556.

In addition, a plaintiff must "nudge[] their claims across the line from conceivable to plausible" otherwise plaintiff's complaint shall be dismissed. *Twombly*, 550 U.S. at 570. In other words, the "plausibility standard requires more than 'a sheer possibility that a defendant has acted unlawfully' but 'is not akin to a probability standard.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015)).

When ruling on a 12(b)(6) motion to dismiss, a court may consider filings attached to the complaint or incorporated by reference in the complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**II.    Breach of Contract and Covenant of Good Faith and Fair Dealing**

ANC alleges that Carboy breached the Amended Agreement in five ways

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 5

by: "(1) failing and refusing to purchase the volumes of grapes and bulk wine that Carboy agreed thereunder to purchase; (2) terminating the Amended Agreement without justification; (3) failing to provide ANC with the contractually-required 30-day notice and opportunity to cure prior to termination; (4) engaging in bad faith efforts to deny ANC the reasonably expected benefits of the Amended Agreement; and (5) breaching its obligation to, in the event of early termination, fulfill 'all obligations [to ANC] as of the date of such termination.' " ECF No. 25 at ¶ 44.

A plaintiff may establish a breach of contract claim by showing "(1) a valid contract, (2) a breach of duty arising under that contract, and (3) the resulting damage." *Silvey v. Numerica Credit Union*, 23 Wash. App. 2d 535, 544 (2022). "The primary objective in contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712 (2014). The intent of the parties may be determined by the actual language of the agreement, as well as from "the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Tanner Electric Coop. v. Puget Sound Power & Light*, 128 Wash. 2d 656, 674 (1996).

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 6

Under Washington law, words in a contract are given "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 504 (2005). While the intention of the parties is a question of fact, unambiguous terms of a contract are interpreted as a question of law. *Paradise Orchards General Partnership v. Fearing*, 122 Wash. App. 507, 517 (2004). Ambiguous terms are those that are "fairly susceptible to two different, reasonable interpretations." *Silvey*, 23 Wash. App. 2d at 545. "A provision is not ambiguous merely because the parties suggest opposing meanings." *Stranberg v. Lasz*, 115 Wash. App. 396, 402 (2003).

### 1. *Carboy's purchase obligations under the Amended Agreement*

ANC alleges that the Amended Agreement required Carboy to purchase minimum amounts of Per-Acre and Per-Ton bulk wine. ECF No. 25 at ¶ 43. Specifically, ANC alleges that the parties course of dealing evidenced their mutual understanding that Carboy was obligated to purchase the Per-Ton bulk wine in the amounts set forth in Schedule A to the 2021 Agreement and Schedule C to the 2023 Agreement. ECF No. 25 at ¶ 17.

Carboy argues that the 2021 Agreement only called for the sale of grapes, not wine, and nothing in the agreement supports ANC's interpretation. ECF No. 31 at 14. ANC responds that Carboy cannot dispute ANC's allegations that the

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 7

agreement contemplated ANC producing bulk wine for Carboy from the beginning and Carboy's own complaint demonstrates as such. ECF No. 32 at 16.

The 2021 Agreement explicitly states that the "Grower agrees to plant at growers total expense, grow, care for, harvest and sell to Winery the vinifera wine grapes . . ." ECF No. 25 at 64. Nothing in the agreement suggests that the parties intended for Carboy to have an obligation to purchase wine from ANC.

ANC next points to 2023 Amendment's language that the parties desired to "expand the Agreement to the winemaking phase of their undertaking," and "[i]n response to Winery's request, Grower shall provide custom bulk winemaking services to Winery for grapes grown hereunder." ECF No. 25 at 75. ANC contends that the phrase "[i]n response to Winery's request" refers to a previous request made by Carboy for ANC to provide winemaking services with respect to all grapes under the Amended Agreement, which ANC agreed to, thereby creating a standing obligation for Carboy to purchase bulk wine from ANC for the remainder of the Amended Agreement term. ECF No. 32 at 17.

Carboy counters that the phrase gave Carboy discretion to request winemaking services in the future, therefore there was no standing obligation to purchase wine every year. ECF No. 33 at 6-7. Carboy further argues that Schedule C lists the price per gallon of wine only as to 2023, which supports its interpretation that there was no standing obligation after 2023. *Id.* at 8-9.

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 8

However, the same Schedule C also includes the title "Per Ton Agreement" and notes the table reflects "Per Ton Prices (2023 thru 2032)."  ECF No. 25 at 78.  Carboy argues that this language is an artifact from Schedule C in the 2021 Agreement.  ECF No. 33 at 9.

While this appears to be a reasonable conclusion, the Court also finds that ANC's interpretation is also reasonable.  ANC alleges in its complaint that the parties entered into a tank lease-back agreement in 2022 where Carboy purchased fermentation tanks from ANC and then leased them back to Carboy through 2033.  ECF No. 25 at ¶ 26.  ANC also alleges that "each harvest year from 2022 to 2024, Carboy requested a downward departure from the volumes of grapes/wine it had committed to purchase under the Per-Ton Agreement."  *Id.* at ¶ 27.  Taking these allegations as true supports ANC's claim that the parties intended the Amended Agreement to create a standing obligation for Carboy to purchase wine from ANC.  The Court concludes that whether the 2023 Agreement created a standing obligation for Carboy to purchase wine from ANC is ambiguous and therefore a question of fact that for purposes of a 12(b)(6) motion must be resolved in favor of ANC.  *See Healy v. Seattle Rugby, LLC*, 15 Wash. App. 2d 539 (2020) ("When multiple meanings are reasonable, which meaning reflects the parties' intent is a question of fact.").

The Court also finds that ANC has sufficiently pled that Carboy had a duty

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 9

to purchase grapes through 2032. Section A of the 2021 Agreement reflects a per acre purchase price of the red and white grapes "Winery agrees to buy from Grower" with the exact acreage to be determined. ECF No. 25 at 64. The 2021 Agreement also includes a Per Ton Agreement that appears to reflect Carboy's obligation to purchase a minimum number of tons at a set price per ton based on the type of grape. ECF No. 25 at 70, 72. The 2023 Amendment provides:

1. The Planted Acreage provisions of Section A of the Agreement are more specifically described in Exhibit A attached hereto and incorporated by this reference as it fully set forth, stating extent of acreage to be planted by Grower on behalf of Winery, the price per acre to be paid by Winery to Grower *annually* and the target tonnage per acre, *all of which shall be purchased by Winery*, none sold by Grower to third parties.

ECF No. 25 at 75 (emphasis added).

Thus, ANC plausibly alleges that Carboy had an obligation to purchase grapes from ANC for the term of the Amended Agreement.

ANC also sufficiently alleges facts supporting a breach. ANC alleges that from 2022-2024, Carboy requested downward departure from volumes of "grapes/wine" it had committed to purchase under the Per-Ton agreement, which ANC agreed to. ECF No. 25 at ¶¶ 27,28. However, after ANC refused to agree to a downward departure for the 2025 harvest, ANC alleges Carboy became uncooperative and ultimately filed its complaint without paying what it owed for the 2025 harvest. The Court concludes that ANC has sufficiently pled a breach of

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 10

contract claim under this theory.

### 2. Failure to provide notice

The Court also concludes ANC has sufficiently pled a breach of contract claim under its theory that Carboy failed to provide the 30-day notice of termination as required under the Amended Agreement.  The 2021 Agreement provides, "[i]n the event that a party breaches this Agreement, then the party not in breach may terminate this Agreement following 30 days prior notice to the other party, unless the other party cures the breach with such 30-day period."  ECF No. 25 at 66.  ANC alleges that Carboy terminated the agreement the day after Carboy filed its complaint without the requisite 30-day notice.  *Id.* at ¶ 40.

Carboy argues for the first time in its Reply brief that ANC's refusal to permit Carboy to sample wine was a material breach of the Amended Agreement that excused Carboy from any further obligations under the contract, including the 30-day notice requirement.  ECF No. 33 at 12-14.  Carboy argues ANC's Amended Answer demonstrates a material breach.  *Id.* at 13.  The Court will not consider arguments raised for the first time in a reply brief.  *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1063 (E.D. Wash. 2013).  However, even if it did, the result would be the same as the operative complaint for purposes of this motion is ANC's counterclaims.  *See Unigestion Holding, S.A. v. UPM Tech., Inc.*, 305 F. Supp. 3d 1134, 1141 (D. Or. 2018).  The Court gives no presumption of truth to Carboy's

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 11

allegations in its complaint and will not consider the complaint or ANC's amended answer. *See id.* The Court takes ANC allegations that it did not refuse to let Carboy take wine samples as true. ECF No. 25 at ¶ 35. Therefore, ANC's counterclaims sufficiently plead facts supporting a breach of contract claim based on Carboy's alleged failure to provide notice prior to termination.

### 3. Implied covenant of good faith and fair dealing

"Under Washington law, [t]here is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102, 112 (2014) (quotation marks and citation omitted). This duty requires that "parties perform in good faith the obligations imposed by their agreement" and "arises only in connection with terms agreed to by the parties." *Badgett v. Security State Bank*, 116 Wash. 2d 563, 569 (1991).

Carboy contends that this obligation *only* arises "when one party has discretionary authority to determine a future contract term." ECF No. 31 at 24 (quoting *Rekhter*, 180 Wash. 2d at 113). The Court disagrees. The court in *Rekhter* did not state that a party's discretionary authority over a contract term was the only instance where the duty of good faith and fair dealing arose. Rather, the court noted that the duty was of particular importance when a party has such discretionary authority. *Rekhter*, 180 Wash. 2d at 113; *see also Silvey*, 23 Wash.

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 12

App. 2d at 556-57 ("One circumstance in which the duty applies is when one party [has] discretionary authority to determine a contract term." (internal quotation marks and citation omitted)).  A party's duty to perform contractual obligations in good faith "exists in *every* contract."  *United Financial Cas. Co. v. Coleman*, 173 Wash. App. 463, 476 (2012) (emphasis added).

ANC alleges that Carboy "engag[ed] in bad faith efforts to deny ANC the reasonably expected benefits of the Amended Agreement."  ECF No. 25 at ¶ 44. Carboy argues that ANC fails to allege bad faith conduct tied to any term of the contract.  ECF No. 33 at 11-12.  The Court disagrees.  ANC alleges that in "July 2025, the parties engaged in further discussions regarding Carboy's Per-Ton obligation for the 2025 harvest."  ECF No. 25 at ¶ 32.  ANC goes on to allege that Carboy engaged in bad faith tactics such as fabricating concerns that needed to be addressed prior to discussing purchases of the 2025 harvest, falsely claiming ANC refused to let wine samples be taken, fabricating sanitation issues during a site visit, and contacting former ANC employees to solicit negative information, all in an attempt avoid its contractual obligations for the 2025 harvest and terminate the Amended Agreement under a false pretext.  ECF No. 25 at ¶¶ 35-38.  As ANC sufficiently pled facts supporting ANC's claim that Carboy had a contractual obligation under the Amended Agreement to purchase grapes/wine pursuant to the Per Ton Agreement on an annual basis through 2032, the Court finds ANC has

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 13

sufficiently pled additional facts supporting its claim that Carboy's refusal to do so for the 2025 harvest was done in bad faith.

### III.    Claim Against Craig Jones

ANC brings a breach of personal guarantees claim against Craig Jones.  ECF No. 25 at ¶¶ 52-57.  Carboy's argument for the dismissal of the claim against Craig Jones rests on its argument that ANC failed to plead a breach of contract claim. ECF No. 31 at 26.  ANC has sufficiently pled a claim for breach of contract, therefore the claim against Craig Jones as personal guarantor of the Amended Agreement remains.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Dismiss Amended Counterclaims in Part (ECF No. 31) is **DENIED**.

2. Defendants' Motion for Leave to File Surreply (ECF No. 34) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED June 16, 2026.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS IN PART ~ 14